# VIOLA SONNTAG AND ANOTHER v. S. C. ADKINSON AND ANOTHER.

87 N. W. (2d) 845.

January 24, 1958—No. 37,144.

*Richard W. Johnson* and *Schermer & Gensler,* for appellants.
*Faegre & Benson* and *G. Alan Cunningham,* for respondents.

KNUTSON, JUSTICE.

This is an appeal from an order denying plaintiffs' motion for a new trial.

The case arises out of an intersection collision between a 1948 Pontiac automobile, owned by plaintiff George Sonntag and driven at the time of the collision by his wife, plaintiff Viola Sonntag, and a 1953 Mercury automobile, owned by defendant S. C. Adkinson and driven by his wife, defendant Velma Adkinson. The outcome of the case hinges on the care exercised by the drivers of these automobiles so they will be referred to as plaintiff and defendant. The collision occurred on August 1, 1954, at about 7 p. m., at the intersection of State Trunk Highway No. 7 and County Highway No. 73 in Hennepin County. At that point Highway No. 7 is a four-lane highway running in an east-west direction, and Highway No. 73 runs north and south, crossing Highway No. 7 at a right angle. Traffic at the intersection is controlled by automatic semaphores.

Prior to the collision, Mrs. Adkinson was driving on Highway No. 73 in a northerly direction. She testified that, as she approached the intersection, the traffic light was red for traffic traveling in a northerly direction. She said that she stopped her automobile in obedience to the traffic light, waited for it to turn green, and then proceeded into the intersection. There were no cars in front of her as she stopped. She had some trouble with her automobile; she said that it would make a little lurch and then stay there a moment and that the motor may have stopped. A car behind her sounded its horn, and she said that

she may have become excited. At any rate, the motor finally responded, and she proceeded to complete her crossing of the intersection but ran into the side of plaintiff's car, which had entered the intersection in the meantime. She admitted that the light may have turned red for northbound traffic while she was trying to complete her crossing of the intersection.

Plaintiff testified that ·as she approached the intersection from the east, traveling west, she observed the traffic light when she was 300 feet from the intersection; that it was then green for traffic traveling on Highway No. 7; and that it did not change color prior to the time she entered the intersection. She was traveling about 45 miles per hour and said that she continued to travel at that rate of speed until she was about 20 feet from the intersection when she first observed defendant's car, which then was in the south half of the intersection. She then applied her brakes and succeeded in slowing down her automobile to about 35 miles per hour, when she was struck on the left side of her car by defendant's car. There seems to be no dispute that the collision occurred on the north half of Highway No. 7.

Aside from the testimony of plaintiff and defendant, there is much conflict in the evidence. Other witnesses who observed the collision testified that plaintiff stopped her car prior to entering the intersection and waited for the light to turn green. Some witnesses testified that defendant entered the intersection on a red light. The jury returned a verdict in favor of defendants, and, after denial of a motion for a new trial, plaintiffs perfected this appeal.

The questions presented here involve the propriety of instructions given by the trial court to the jury. Plaintiff claims that it was error to instruct the jury on the question of excessive speed, contending that there is no evidence that plaintiff was traveling at an excessive speed at any time, and, second, that the court erred in not explaining the law sufficiently with respect to the rights and duties of a party who enters an intersection on a green light and then stops within the intersection and remains there until another motorist, traveling at right angles, enters the intersection on a green light.

■ The court read to the jury that part of M. S. A. 169.14 which reads:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

Plaintiff contends (1) that there is no evidence of excessive speed, and (2) that speed under the evidence in this case could not constitute a proximate cause of the accident.

Plaintiff's own testimony was that she was 300 feet from the intersection when she first observed the traffic lights and that the light then was green in her favor; that she was traveling 45 miles per hour until she applied the brakes as she saw defendant's car crossing the intersection; that she then was only 20 feet away from defendant's car; and that she was traveling 35 miles per hour when hit. There is no evidence to show what was the maximum permissible speed limit on Highway No. 7 at the point of collision. However, the jury could accept the testimony of defendant that she had entered the intersection on a green light and that she had trouble completing her crossing of the intersection. If the jury believed that the light changed to red for defendant before the collision and that the light was green for plaintiff, as she testified, when she was 300 feet from the intersection, it would follow that defendant was in the intersection at least during the time that plaintiff traveled these 300 feet. If that were true, plaintiff should have seen defendant's car in the intersection in ample time to reduce her speed so as to avoid a collision. While plaintiff's witnesses do not agree with her and the evidence is very much in conflict, if the jury accepted plaintiff's testimony as to where she was when she first observed a green light in her favor, there would be ample grounds for concluding that she should have seen defendant in the intersection; that she should have reduced her speed; and that, if she had done so, she could easily have avoided the collision. Under these circumstances, it was proper for the court to read to the jury the

statutory rule with respect to speed.[1]

█ While the evidence as to whether defendant entered the intersection on a green light or a red light also is very much in conflict, the jury could accept defendant's testimony that she stopped and waited until the light turned green and then proceeded into the intersection. Whether defendant's car was standing still or moving when the light thereafter turned against her does not appear so conclusively from the evidence that the jury was compelled to conclude that it was standing still. Defendant was not sure about it herself. The jury could conclude from all the evidence that defendant entered upon a green light and had some difficulty proceeding but that she actually was proceeding when the light turned red against her. The testimony of the witnesses is so hopelessly in conflict that the court was compelled to instruct on the law, having in mind the fact that the jury might arrive at one of several conclusions, depending upon which testimony it accepted as true. If the jury believed that defendant entered the intersection on a green light and was slowly moving through it, even with some mechanical difficulty, § 169.06, subd. 5(a)(1), would have some application. That statutory provision reads:

"When traffic is controlled by traffic-control signals exhibiting the words 'Go,' 'Caution,' 'Stop,' or exhibiting different colored lights successively one at a time, or with arrows, the following colors only shall be used, which terms and lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

"(a) Green alone, or 'Go'—

"(1) Except when prohibited under Section 169.24, vehicular traffic facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits the turn; vehicular traffic shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection at the time that signal is exhibited."

If, on the other hand, defendant entered on a green light and then stopped in the intersection and later proceeded after the light had changed against her, the right-of-way rule stated in Wright v. Minne-

---

[1]See, Adelmann v. Elk River Lbr. Co. 242 Minn. 388, 65 N. W. (2d) 661; Zurko v. Gilquist, 241 Minn. 1, 62 N. W. (2d) 351.

apolis St. Ry. Co. 222 Minn. 105, 23 N. W. (2d) 347, which is relied upon by plaintiff, no doubt would apply. In that event, there would be no applicable statutory rule. That, however, would not give plaintiff a right to enter the intersection in complete disregard of the perilous position in which defendant found herself. One approaching an intersection with a green light in his favor does not have an absolute right to proceed in disregard of the safety of others who may be in the intersection. The duty to use due care still prevails.[2]

■ A driver entering a controlled intersection on a green light has the duty to see that other traffic which has lawfully entered the intersection has cleared it.[3]

■ Irrespective of statutory traffic rules, the common-law rule of due care applies even at an intersection controlled by automatic semaphores. In addition to the statutory rule, the court instructed the jury generally that negligence consists of the failure to use ordinary or reasonable care. Apparently counsel for plaintiff was satisfied with the instruction on this phase of the case since he took no exceptions to any part of the charge, except that relating to speed, until the jury returned for further instructions.

■ After the jury had retired it returned for further instructions, after which the court again read the statutory traffic rules and then said:

"Which would mean that the light changed, and the vehicle was within the intersection, and was within the intersection in obedience to the light, it would be the duty of the person about to proceed with the changed green light to yield to a vehicle already lawfully within the intersection pursuant to the regulation of the light."

Thereafter counsel for plaintiff requested that the court specifically instruct the jury as to the rights and duties of the parties when the driver of an automobile enters upon a green light, then stops in the intersection, after which the light turns. The court then further instructed the jury as follows:

"It is the general duty of the driver of a motor vehicle to use rea-

[2]Jablinske v. Eckstrom, 247 Minn. 140, 76 N. W. (2d) 654.
[3]Freeman v. Churchill, 30 Cal. (2d) 453, 183 P. (2d) 4.

sonable care in the operation of such vehicle for his own safety and the safety of others lawfully upon the highway, and to keep such vehicle under reasonable and proper control, and to maintain a proper lookout for other vehicles, persons, and property upon such highway; and failure to do so is negligence."

Counsel for plaintiff still insisted that the court had not instructed the jury sufficiently and requested that the court instruct the jury:

"* * * that where a person has entered lawfully on the green signal, and for some reason finds the car stalled, and the light changes while he or she is in the intersection, that she must use reasonable care to prevent injury to other vehicles which have entered lawfully on the green light from an intersecting highway."

Thereafter the court, again attempting to comply with counsel's request, instructed the jury as follows:

"* * * the overall duties, that of every driver to use reasonable care, such care as a reasonably prudent person would use under the same or similar circumstances, is always present. And the duty of a driver entering an intersection to yield to one already within the intersection, and the right of the one to proceed, is not an unrestricted right; that is, it is a duty of every driver of a vehicle to use reasonable care. You will have to determine what the circumstances are."

And the court further said:

"* * * It is your duty to find what the facts were. But should you find that a party entered the intersection with the light in his favor— with the light in her favor, they are both womenfolks driving here— and that within that intersection the light changed, and through emergency they were unable to proceed, then the duty of reasonable care would apply to both drivers.

"It would be the duty of the driver thereafter entering that intersection to yield to one lawfully within the intersection. It would be the duty of the other one then within the intersection to use reasonable care in proceeding thereafter."

We think that the instruction sufficiently covered the applicable law. Instructions of the trial court must be read as a whole in assessing

the impact upon the minds of the jury. Counsel argues:

"The court erred in instructing the jury that a vehicle which stops after lawfully entering an intersection has the right-of-way over vehicles which subsequently enter the intersection."

A fair reading of the court's instruction as a whole could hardly leave that impression. We do not believe that the jury could have so understood the instruction. In support of plaintiff's contention, she selects only a small portion of the court's charge, but it is elementary that the portion selected and lifted out of the context of the whole instruction must be read with other portions thereof, and, when that is done, it seems to us that the jury was adequately instructed that the duty rested upon both parties to use due care in view of all the circumstances existing in the case. We find no error in that regard.

Affirmed.